## THE CITY OF SEATTLE *vs.* H. L. YESLER.

Whether the incorporation of the City of Seattle under a special charter of the Territorial Legislature was authorized by law not passed upon; as by subsequent act of congress it is declared Section 1889, R. S., shall not be construed as prohibiting the legislatures of the Territories from creating towns or cities by special acts and prior territorial legislation of such character is thereby ratified and confirmed.

Congress has power to so legislate.

This act of Congress does not restrict Section 1924, R. S., which provides for the equality and uniformity of taxes—forbids discriminations in the

assessment of different kinds of property, and requires all assessments to be according to valuation.

The legislative grant of power, in the charter of the City of Seattle, is within the restrictions of Section 1924, R. S.

A town or city in this Territory may make an assessment for a local improvement, a lien on the property benefited, to the extent of its value, but cannot make the tax a personal charge against the owner.

The word "assessment" in the Organic Act, is employed in a common and general sense.

In this Territory, a town or city making a special assessment on property for street improvements, must apportion to each lot benefited, an assessment, bearing the same proportion to the ascertained cost of the improvement, as the value of such lot bears to the value of the property determined to be benefited by the improvement.

The municipality must fix a method of determining such proportions and facts.

The assessment in this case is neither uniform nor in accordance with the value of the property taxed.

The ordinances regulating the assessments are inconsistent with the provisions of Section 1924, R. S., and void.

Error to Third Judical District.

*J. J. McGilvra* and *Thos. Burke* for plaintiff in error.

*McNaught & Leary* for defendant in error.

Opinion by LEWIS, Chief Justice.

As shown by the complaint, this action was brought by the city to recover of defendant the cost of grading Front street in said city, in front of certain lots by him owned.

The city was incorporated under special acts of the legislative assembly, passed in 1869 and 1875.

It is alleged that by "ordinance duly passed and approved on the 11th July, A. D., 1876," a grade for Front street was established, and by an ordinance duly passed and approved, entitled ordinance, No. 112, to provide for grading Front street, plaintiff did provide for the grading of said street in accordance with the grade established.

The city caused Front street to be graded from James to Columbia streets; and by virtue of an ordinance entitled ordinance No. 114, duly passed on the 8th July, A. D., 1876, the city partially graded Cherry street.

The defendant was and is the owner of certain lots named, which front on Front and Cherry streets, where the grading was done.

The work and labor were reasonably worth the sum stated.

That by virtue of an ordinance of the city duly passed July 13th, 1876, prescribing the mode in which charges and assessments for the street improvements shall be assessed and collected, and an amendatory ordinance passed on the 24th July, A. D., 1876, entitled ordinance No. 121, amending Sections 1 and 4 of ordinance No. 117, the estimated cost of *grading in front of the lots aforesaid, was assessed on, and against said lots,* amounting to the sum claimed, to wit: Four hundred and fifty dollars and *constitutes a tax* levied upon *said lots* respectively.

The defendant was duly notified of said assessment and the amount thereof, and such assessment and tax then and there became a lien upon the property aforesaid, and *the defendant then and there* became liable to pay the same.

It will be noticed that by the ordinances of the city above cited *each lot* was charged with the *cost of the grade in front thereof,* which was assessed and taxed *against the same,* and that this action was brought to recover a *personal judgment* against the defendant for the amount of such cost and assessment.

The defendant interposed a demurrer to the complaint, setting out numerous points of objection, among which are these.

1. That the said assessment and tax do not constitute a debt for which the defendant is personally liable.

2. That it is apparent from the complaint, that the tax is not uniform, nor in accordance with the value of the property, but is assessed according to the height of the hill to be cut down, or the ravine to be filled up.

3. That the charter is void, for the reason that it was passed by a special act of the legislature.

This demurrer was sustained by the District court, and the

plaintiff electing to stand upon the complaint, judgment was
rendered in favor of the defendant.

To reverse the action of the court below, the city has pre-
sented this writ of error, assigning as error the action of the
District court in sustaining the demurrer.

Since the trial of this cause in the District court, congress
has passed an act, declaring " that Section 1889 of the revised
statutes of the United States shall not be construed as prohibit-
ing legislative assemblies of the territories, from creating
towns and cities * either by general or special acts, and that all
general and special acts of such legislative assemblies, hereto-
fore passed, creating and providing for the government of towns
and cities, and conferring such rights, powers, and privileges,
*as were necessary to their local administration,* are ratified and
*confirmed and declared* valid * but nothing in the act shall
have the effect to create any private right, except that of hold-
ing and executing municipal offices, or to divert any such right
or to make valid or invalid any contract or obligation heretofore
made by or on behalf of the city."

Touching this act of Congress, we are all agreed that
Congress possessed ample power to enact the same, and that
since the passage of the act "The City of Seattle" is a legally
organized municipal corporation. That the effect of the act
was to make such city a corporation " de jure," at and from the
date of the special acts of the legislative assembly.

Whether the city was, or was not, a duly organized munic-
ipal corporation, prior to this act of Congress, it is not here
necessary to determine.

This late act of Congress, however, in no wise conflicts
with the provisions of Section 1924 of the revised statutes of
the United States, and all the provisions of said Section 1924
are in full force within the Territory notwithstanding such act.

The purpose of Section 1924 is to limit the powers of the
legislative assembly, and among such limitations, are these, to
wit:

"All taxes shall be equal and uniform, and no distinctions

shall be made in the assessments between different kinds of property, but the assessments *shall be according to the value of the property.*"

These limitations upon the power of the legislature are for the benefit and protection of the citizens, and tend to secure them against unjust and unequal taxation; any and all acts of the legislature or the city, in conflict therewith, are void.

It will not be presumed that the legislature, in the enactment of the city charter of 1875, intended to violate any of the provisions of the Organic Act of the Territory, and it is manifest, from an examination of the charter, that it was the legislative mind that the city council should exercise this taxing power, subject to the limitations of the Organic Act.

Looking at the provisions of the charter of 1875, it will be noticed that all taxes for general and special purposes shall not, in any year, exceed one and one-half per centum on the property assessed, except for certain improvements named.     Per Section 8, power is given to levy special assessments or taxes on lots fronting on streets, to pay the expenses of grade.

And per Section 10, the city has power, by general ordinance, to prescribe the mode in which the charge shall be assessed and determined, and in any proceedings to recover the same, if the court is satisfied that the work has been done, which, according to the *true intent* and meaning of the charter, would be *properly* chargeable upon the lot—as recovery shall be permitted to the extent of a *proper proportion of the value of the work*, which should be chargeable.

Touching the first point made by the demurrer, it seems that by ordinance, the city has not only made this special tax a lien upon the lots, but has also made it a personal charge against the owner.

While this has been done in many of the states we are satisfied that such rule is not in accord with reason or justice.

Such an assessment, says Judge Cooley, "regards nothing but the benefit that is to be conferred upon the particular estate.

" The levy is made on the supposition that, that estate hav-

ing received the benefit of the public improvement, ought to relieve the public from making it.

"In such case if the owner can have his land sold for a supposed benefit to the land * and be held liable for a deficiency in the assessment, the injustice, not to say the tyranny, is manifest." Cooley on Taxation, 471-2.

"Local taxes for local improvements are merely assessments upon the property benefited by such improvements to pay for the benefits which they are supposed to confer * *. The sole object, then, of a local tax being to benefit local property, it should be a charge upon *that property only*, and not a general one upon the owner." *Neemon vs. Smith*, 50 Mo., 525; *Carlin vs. Cavender*, 56 Mo., 286; *St. Louis vs. Brester*, 56 Mo., 350.

"This power to tax specific property is founded upon the benefit to be derived from the property itself, hence the property not benefited by the improvement cannot be subjected to the burden imposed for that purpose; the relief granted should be limited to a sale of the lot upon which the assessment is made." *Taylor vs. Palmer*, 31 Cal., 241; *Gaffney vs. Leigh*, 36 Cal., 104.

The principle declared by Judge Cooley and fully supported by the Supreme court of Missouri and California is based upon reason and justice, and is in our view the correct rule for making such assessments.

The city may take the whole property benefited, if necessary, for the payment of the tax, but cannot make the tax a personal one against the owner,

As to the second point made: An assessment, strictly speaking, is an official estimate of the sums which are to constitute the basis of an apportionment of a tax between the individual subjects of taxation within the district.

As the word is more commonly employed an assessment consists in the two processes of listing the persons and property to be taxed, and of estimating the sums which are to be the guide in an apportionment of the tax between them. Cooley on Taxation, 258.

We are satisfied that the word "assessment" in the Organic Act was used in its common and general sense, and that the limitations therein prescribed are applicable to general as well as special taxes.

Not only must all taxes be equal and uniform, but they must be levied and assessed upon all property in accordance with the value thereof.

Wherefore in making all special assessments upon property for grading and improving streets within the city—the same must be levied and assessed upon the property benefited in accordance with the value of the same—the whole cost of the improvement to be made within the given district must be ascertained; the property to be benefited must be determined, and the value thereof fixed, and when this has been done, the cost of such improvement must be apportioned among the several lots benefited, in the proportion which the value of each lot bears to the value of all.

The exact mode of fixing and determining these several facts must be prescribed by the city council.

An assessment made in accordance with this rule will not only be equal and uniform, but in accordance with the value of the property taxed. Justice will thereby be done both to the lot owners, and the city.

The mode adopted by the city is neither uniform nor in accordance with the value.

There is no apportionment of the cost of the improvement among the several lots benefited, but each particular lot is made arbitrarily to pay the whole cost of the grade in front thereof.

Lots already upon the established grade are not charged with any of the burdens, while those on either side which happen to be above or below must bear the whole expense, though no more benefited by the improvement than the others. Such a basis is unequal and unjust. Cooley, Const Limit., 508; *St. John vs. St. Louis*, 50 Illinois, 97.

We therefore reach the conclusion, that the ordinances of the city, making the cost of the grade in front of each lot, a

73

charge upon such lot, are wholly inconsistent with provisions of Section 1924 of the revised statutes and are therefore void.

The judgment of the District court must be affirmed.